IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| LEE CORNELIUS MURRAY, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:07-CV-0184 |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION
## TO DENY PETITION FOR WRIT OF HABEAS CORPUS

Petitioner LEE CORNELIUS MURRAY has filed with this Court a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 181st Judicial District Court of Potter County, Texas, for the felony offense of burglary of a habitation. For the reasons hereinafter expressed, the United States Magistrate Judge is of the opinion petitioner's application for federal habeas corpus relief should be DENIED.

I.
PROCEDURAL HISTORY

On June 17, 2004, petitioner was indicted for the offense of burglary of the habitation of Yanina Mullins, alleged to have occurred on or about May 24, 2004, enhanced by two prior felony burglaries. *State v. Murray*, Cause No. 49243B. On August 12, 2004, a jury found petitioner guilty of burglary of a habitation and, after finding the two enhancement paragraphs to

be true, sentenced petitioner to seventy (70) years in the Texas Department of Criminal Justice, Correctional Institutions Division.

Petitioner appealed his conviction and sentence to the Seventh Court of Appeals, and that court affirmed petitioner's conviction and sentence on September 19, 2005. *Murray v. State*, 172 S.W.3d 782 (Tex. App.–Amarillo 2005, no pet.).

On April 19, 2006, petitioner filed an application for state habeas corpus alleging, among other things, the grounds for relief he presents in the instant federal petition. On April 4, 2007, the Court of Criminal Appeals dismissed one of petitioner's claims as moot and denied relief on the remaining three grounds by written order. *Ex parte Murray*, No. WR-39,846-03. On August 29, 2007, petitioner filed this federal petition for habeas relief. On October 19, 2007, the State filed its answer and, on December 7, 2007, petitioner filed a reply brief. (*See* "Petitioner's Objection to Respondent Quarterman's Answer").

## II.
## FACTUAL HISTORY

The State presented evidence at petitioner's trial that, at 2:30 or 3:00 a.m. on May 24, 2004, Amarillo police officers responded to a residential burglar alarm at the home of Yanina and James Mullins. (R. 2:130-31, 159-60). When the first two responding officers arrived, they noticed the gate into the backyard was open, a window into the house was open, and a plastic dog house was placed underneath the window. (R. 2:132-33). They then heard dogs bark and what sounded like a person jumping a chain link fence. One of the officers ran toward the sound until he encountered petitioner exiting an alley. Petitioner was walking, but he was sweating and breathing hard, and he had dust all over the front of his shirt. (R. 2:134-38, 153, 161-63, 170-

71).  The officers noticed there was dust in the window sill that appeared to have been disturbed.  Inside the house, they observed the alarm box had been pulled from the wall, a television had been moved sideways on an entertainment center, and a jewelry box had been opened and the contents emptied on a bed.  (R. 2:141-46, 167).  Petitioner had a television remote control in his pocket and some women's necklaces.  (R. 2:164, 169).  The officers noted the remote control found in petitioner's pocket operated the television in the house.  (R. 2:167).  After they returned from their vacation, the Mullins identified the remote control as belonging to them and the three necklaces as belonging to Yanina Mullins.  They both also testified at trial that these items belonged to them and that petitioner did not have permission to enter their home.  (R. 3:18-25, 35-39).  The police attempted, but were unable, to find any comparable fingerprints at the Mullins' residence.  (R. 2:149-52, 167-68; R. 3:16-17).

### III.
### PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United States for the following reasons:

1. The trial court erred in denying a defense motion for mistrial based upon a tainted jury venire; and

2. Petitioner was denied effective assistance of counsel at trial because counsel failed to fully investigate potential defenses.

### IV.
### EXHAUSTION OF STATE COURT REMEDIES

In his answer to this petition, respondent states petitioner has sufficiently exhausted his available state court remedies as required by 28 U.S.C. § 2254(b), (c).

## V.
## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody under a state court judgment shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). A state court decision will be an unreasonable application of clearly established precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46 (5th Cir. 2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003).

Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Hill*, 210 F.3d at 485. When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d

469, 472 (Tex. Crim. App. 1997).

Petitioner filed a state habeas application challenging the constitutionality of his conviction and sentence alleging, among others, the same grounds alleged in this petition. The Court of Criminal Appeals denied petitioner's grounds for relief on April 4, 2007 by written order. *Ex parte Murray*, No. WR-39,846-03. The ruling of the Texas Court of Criminal Appeals constitutes an adjudication of petitioner's claim on the merits. *Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999). Consequently, this Court's review is limited to a determination of whether petitioner has shown the state court's decision that petitioner was not denied his constitutional rights was contrary to, or involved an unreasonable application of, clearly established federal law or was an unreasonable determination of the facts in light of the evidence before the state court.

## VI.
## MERITS

### A. Tainted Jury

In his first ground, petitioner contends the jury panel was impermissibly tainted because of a comment made by one of the potential jurors in front of the other jurors. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A petitioner is thus entitled to federal habeas relief due to trial error only if such error had a substantial and injurious effect or influence on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a
> defendant to habeas relief unless there is more than a mere reasonable possibility

> that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)). To be entitled to federal habeas relief due to a trial error, petitioner must show the error actually prejudiced him. *Brecht*, 507 U.S. at 637.

During jury voir dire, the prosecutor asked the members of the panel whether any of them knew the defendant or his family or knew the facts of the case. One member of the panel stated that he knew petitioner, who he referred to as "L.C.," because they were raised in the same neighborhood. He was then asked how well he knew petitioner, and he stated that he only knew him by seeing him in the neighborhood and that everybody knew "how he was." The prosecutor then asked this member of the venire whether his prior knowledge of petitioner would affect his ability to judge the case, and he stated that it would. (R. 2:74-75). The prosecutor then asked whether anyone else knew the defendant, and no-one else did. (R. 2:75). This juror was later excused by the trial court because he knew petitioner, and neither party was required to use a peremptory strike to remove him from the jury. (R. 2:107).

A different panel member then approached the court in private and stated that she had concerns about what the other venire member had said about knowing petitioner and knowing "how he was." She then stated she could not put this statement out of her mind, but was not saying that she could not be objective. (R. 2:108-09). This juror did not serve on the jury and was not peremptorily challenged by either party. (Trial Transcript:7). Later, defense counsel moved for a mistrial because the jury pool was tainted. Counsel based her motion on the statement the first venire member made about petitioner and the fact that the other venire person

had stated it might taint her. (R. 2:113). The trial court questioned the entire panel about the statement made about petitioner and asked whether there was any member, having heard the statement, who felt that he or she would not be fair to petitioner because it would have an influence on their decision-making at trial. Most of the members of the panel indicated they had heard the comment, but no venire member indicated the statement would affect his or her decision-making as jurors. The trial court then denied the motion for mistrial. (R. 2:114-16).

Petitioner asserts the trial court erred in denying the motion for mistrial because the comment from the one juror tainted the minds of the potential jurors against him. (Pet. at 7). This Court would first note the statement itself was of short duration. Moreover, it was not emphasized by either party, and the potential juror who later mentioned it to the trial court stated she also said she was not saying she could not be objective. This venire member further stated she could follow the jury charge that she was to consider only the evidence and testimony in the case. (R. 2:109). More importantly, neither she or the original venire member who made the statement served on petitioner's jury.

In a criminal trial, it is not necessary that jurors be totally ignorant of the facts and issues involved, but rather that they be able to set aside any impressions or opinions they may have and render a verdict based upon evidence presented in court. *Murray v. Florida*, 421 U.S. 794, 798-800 (1978); *Irvin v. Dowd*, 366 U.S. 717, 722-3 (1961). The remaining members of the panel, when specifically asked, did not indicate the statement would have any effect on their decision making as jurors. Accordingly, there is no evidence in the record that this single, short statement had any effect on the remaining venire members, much less those who served on petitioner's jury. Petitioner has failed to show any error in the denial of his motion for mistrial and has failed

to show the denial had a substantial or injurious effect or influence on the verdict. Without such a showing, petitioner has failed to establish a violation of his constitutional rights. The state habeas court's denial of relief on this ground is not contrary to federal law. This ground is without merit.

### B. Ineffective Assistance of Trial Counsel

In his second ground, petitioner asserts his trial counsel was ineffective for failing to conduct an investigation into the dust found on petitioner's clothes that was attributed to the dust found on the window sill of the house that had been burglarized. In order to obtain habeas corpus relief on grounds of ineffective assistance of counsel, a petitioner must demonstrate not only that his counsel's performance was deficient, but also that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To demonstrate deficiency, the petitioner must show counsel's actions "fell below an objective standard of reasonableness." *Id*. at 668, 104 S.Ct. at 2064. However, a strong presumption exists "that trial counsel rendered adequate assistance and that the challenged conduct was reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066). To demonstrate prejudice, a petitioner must show a "reasonable probability" exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Id.* at 697, 104 S.Ct. at 2069.

At the state habeas level, petitioner's trial attorney submitted an affidavit in which she explained that, in preparation for petitioner's trial, she spoke with petitioner about potential

defenses, she took pictures of the scene and took measurements, she filed appropriate pre-trial motions, and she reviewed the case with a mock jury. She also stated in her affidavit that the evidence against petitioner was overwhelming, given that he was caught in the alley behind the house with unique jewelry and a remote control taken from the house minutes after the burglar alarm went off. (State Habeas Transcript [WR-39,846-03] at pp. 63-4). The record from the trial reflects defense counsel questioned the State's witnesses in detail (R. 2:153-57,172-89, 25-32), and argued in closing that the State had not proven petitioner was in the house, that there were inconsistencies in the police officers' reports, that petitioner lived right next to where he was arrested, that the jewelry could have belonged to a member of his family or his girlfriend, and that the person who stole the property could have given it to petitioner. (R. 3:54-9).

The State did argue in closing that the dirt on petitioner's shirt was evidence that he climbed in the window and committed burglary. (R. 3:52). While petitioner asserts his attorney did not pursue a potential defense regarding the dust found on his shirt, petitioner does not elaborate how a further investigation would have benefitted him. Petitioner has not alleged, much less shown, what such further investigation was available or how any further investigation by counsel into the dirt found on petitioner's shirt would have yielded any evidence that the dirt did *not* come from the window sill. Petitioner has not met his burden to prove his attorney was deficient in this respect. Instead, the record before this Court indicates trial counsel ably represented petitioner before and during trial. Moreover, as noted by petitioner's trial counsel in her affidavit, petitioner was caught "red-handed." The evidence against petitioner was overwhelming, including his presence in the alley behind the burglarized house in the early morning hours, where he was found sweating and breathing hard only minutes after the burglar

alarm sounded. He was in possession of unique property taken from inside the house in his pockets, including a remote control to the television in the burglarized house. Petitioner has failed to show he was prejudiced because he has failed to show a reasonable probability that, had further investigation been conducted, he would not have been convicted. Petitioner, failing to prove either prong of the *Strickland* standard or that the state habeas court's denial of this ground was contrary to federal law, is not entitled to relief on this claim.

Petitioner's grounds are without merit and should be DENIED.

## VII.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for Writ of Habeas Corpus by a Person in State Custody filed by petitioner LEE CORNELIUS MURRAY be DENIED.

## VIII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 20th day of August, 2010.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

# * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).